**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**
**CASE NO.** 1:17-cv-136-GNS

| | |
|---|---|
| UNION UNDERWEAR COMPANY, INC.<br>d/b/a FRUIT OF THE LOOM | PLAINTIFF |
| v.   **VERIFIED COMPLAINT** | |
| MARK W. HARTMAN | DEFENDANT |

Please serve:   Mr. Mark W. Hartman
                800 Park Drive
                Goodlettsville, TN 37072

Plaintiff Union Underwear Company, Inc. d/b/a Fruit of the Loom for its Complaint against Defendant Mark W. Hartman, states as follows:

**PARTIES**

1. Plaintiff Union Underwear Company, Inc. d/b/a Fruit of the Loom ("Union Underwear") is a Delaware corporation with its principal place of business in Bowling Green, Warren County, Kentucky. Union Underwear is a wholly-owned subsidiary of Fruit of the Loom, Inc. ("FOL"), which is a Delaware corporation with its principal place of business in Bowling Green, Warren County, Kentucky.

2. For purposes of this Complaint, the term "Fruit of the Loom" refers to FOL and its direct and indirect operating companies, including Union Underwear.

3. On information and belief, Defendant Mark W. Hartman is an adult resident citizen of Sumner County, Tennessee.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the parties are diverse in citizenship.

5. This Court has personal jurisdiction over Hartman because this lawsuit arises from Hartman's breach of his Non-Competition Agreement with Union Underwear (the "Agreement," a copy of which is attached hereto as **Exhibit A**), and, in the Agreement, the parties consented to personal jurisdiction in the United States District Court for the Western District of Kentucky for "any action or proceeding arising out of [the] Agreement."

6. Venue is proper under 28 U.S.C. § 1391 because this is the district in which a substantial part of the events or omissions described in this Complaint occurred and because the parties to the Agreement also "waive[d] any objection to venue" in the Western District of Kentucky.

## GENERAL ALLEGATIONS

7. Fruit of the Loom is in the business of manufacturing and supplying casualwear, underwear, and intimate apparel for consumers worldwide. Fruit of the Loom sells numerous different brands of products, including Fruit of the Loom-branded men's and boys' underwear and several brands of women's underwear and intimate apparel, throughout the United States.

8. Hanesbrands Inc. ("Hanes"), a Maryland corporation with its principal place of business in North Carolina, is a competitor of Fruit of the Loom. Hanes is also in the business of supplying casualwear, underwear, and intimate apparel to consumers throughout the United States. Hanes sells its products through several different brands, including the Polo Ralph Lauren brand of men's underwear.

Hartman's Employment With Fruit of the Loom

9. From December 2009 through July 10, 2017, Hartman was employed in several different capacities by Union Underwear, an operating company of FOL.

10. Most recently, from September 2015 until resigning from Union Underwear in July 2017, Hartman was Vice President of Marketing for Fruit of the Loom's Men's and Boys' Underwear business. In that role, Hartman was directly responsible for maintaining and growing the profitability of the Men's and Boys' Underwear business, which included decision-making authority over pricing, promotions, marketing, sales, and product development.

11. The Men's and Boys' Underwear business is Fruit of the Loom's largest business unit.

12. In his role as Vice President of Marketing for the Men's and Boys' Underwear business, Hartman had access to sensitive and proprietary information concerning that business, including customer lists and contact information, account information, sales figures, merchandising and sales strategies, product pricing, product specifications, cost information, and sales practices and policies.

13. Hartman was also directly responsible for maintaining relationships with and increasing sales to existing Men's and Boys' Underwear customers, and for developing prospective customers.

14. Hartman also oversaw the formulation of the short and long-range (five-year) strategic plans for the Men's and Boys' Underwear business. One of Fruit of the Loom's long-range strategic initiatives that Hartman helped to develop was to expand distribution of Fruit of the Loom's Men's and Boys' Underwear products into more upscale, premium channels, such as department stores and national chains. Fruit of the Loom anticipates that this strategy will put its

Men's and Boys' Underwear business in direct competition with Hanes's premium men's and boys' underwear offerings, including Hanes's Polo Ralph Lauren-branded products. As part of the action taken to implement this strategy, Hartman led a meeting with Macy's, Inc. ("Macy's") in June 2017 regarding placement of Fruit of the Loom's Men's and Boys' Underwear products in Macy's department stores.

15. Hartman prepared and gave presentations regarding the strategic plans of the Men's and Boys' Underwear division at Fruit of the Loom's annual long-range strategic planning meetings. The most recent strategic planning meeting in which Hartman participated was in June 2017 at Fruit of the Loom's headquarters in Bowling Green, Kentucky. At that meeting, Hartman presented on the Men's and Boys' Underwear business's long range plans, including the plan to compete in more upscale, premium channels.

16. The annual long range strategic planning meetings that Hartman attended also involved Fruit of the Loom's other business units, including, among others, Fruit of the Loom's casualwear and women's intimate apparel brands, which are also businesses where Fruit of the Loom competes with Hanes. At these meetings, short and long-term strategies and confidential customer and product information were presented and discussed.

17. During his employment with Union Underwear, Hartman participated in Fruit of the Loom's Management Incentive Program. To participate in the 2016 Management Incentive Program, Hartman executed the Agreement, which recognized that Hartman was a "key contributor" to Fruit of the Loom's success. Hartman had executed similar agreements in past years.

18. Before becoming Vice President of Marketing for the Men's and Boys' Underwear business, Hartman served:

    a. as the Vice President of Marketing for Fruit of the Loom's women's intimate apparel business from October 2014 until September 2015;

    b. as the Marketing Director for the Fruit of the Loom and Fit for Me brands of women's intimate apparel from December 2011 until October 2014; and

    c. as the Senior Marketing Manager for Fruit of the Loom's Vanity Fair, Lily of France, Exquisite Form, and Private Label brands of women's intimate apparel from December 2009 until December 2011.

19. In these roles, Hartman was responsible for developing and implementing Fruit of the Loom's short and long-range strategic plans and for calling on current and prospective customers. Hartman also had access to sensitive and proprietary information concerning these various products, including customer lists and contact information, account information, sales figures, merchandising and sales strategies, product pricing, product specifications, cost information, and sales practices and policies.

20. During the period of his employment from December 2009 through July 2017, Union Underwear paid Hartman more than $1.2 million in compensation, including nearly $50,000 as part of the 2016 Management Incentive Program.

Hartman's Non-Competition Agreement

21. On April 13, 2016, Hartman signed the Agreement.

22. The parties to the Agreement were Hartman and Union Underwear. By its terms, the Agreement "set[] forth certain terms and conditions relating to [Hartman's] employment with" Union Underwear.

23. In Section 4 of the Agreement, the parties stipulated that the Agreement "shall be governed by and construed according to the laws of the Commonwealth of Kentucky, without giving effect to any conflicts of laws principles that would require application of the law of any other jurisdiction."

24. Hartman signed the Agreement in exchange for participation in Fruit of the Loom's 2016 Management Incentive Program, which awarded "bonus" compensation to Fruit of the Loom management, as well as being eligible to participate in "any sales or management incentive plans [Union Underwear] may offer in the future." In Section 7 of the Agreement, Hartman acknowledged that participation in the 2016 Management Incentive Program was "good and valid consideration" for his promises in the Agreement, "whether or not a bonus [was] actually earned" under the Program.

25. In Section 1(a)(i) of the Agreement—the "non-solicitation provision"—Hartman promised that for a period of 12 months after termination of his employment, he "[would] not, directly or indirectly, on behalf of [himself] or any other person, company or entity … solicit or participate in soliciting any Covered Customer (as defined below), directly or indirectly, to purchase products from a Competitor (as defined below), or to decrease its level of business or discontinue doing business with [Union Underwear]."

26. In Section 1(a)(ii) of the Agreement—the "non-competition provision"—Hartman promised that for a period of 12 months after termination of his employment, he "[would] not, directly or indirectly, on behalf of [himself] or any other person, company or entity … work or provide services for a Competitor, whether as an independent contractor, advisor or otherwise, in any area, position or capacity in which [he] gained particular knowledge or experience during his employment with [Union Underwear]."

27. Section 1(b)(i) defined a "Covered Customer" as "a retailer, wholesaler, distributor, or other entity which purchased products of [Union Underwear] or an affiliate during [Hartman's] employment with [Union Underwear] or an affiliate."

28. Section 1(b)(ii) defined a "Competitor" to mean twenty-two specific, identified companies, including Hanes, "and any of their subsidiaries, affiliated companies or successors."

29. In Section 3 of the Agreement, Hartman agreed that the various covenants set forth in the Agreement "shall be considered and construed as separate and independent covenants."

30. In Section 6 of the Agreement, Hartman agreed that "the promises, covenants and other terms of [the] Agreement"—including the non-solicitation and non-competition provisions—"shall survive the termination of [his] employment" with Union Underwear.

31. In the second "Whereas" clause of the Agreement, Hartman "acknowledge[d] and agree[d] that the terms of [the] Agreement"—including the non-solicitation and non-competition provisions—"[were] reasonable and necessary to protect [Union Underwear's] legitimate business interests and that [his] compliance with [the] Agreement [would] not unreasonably restrict [him] from obtaining other gainful, lucrative and desirable employment that [would] not violate the restrictions contained in [the] Agreement."

32. In Section 2 of the Agreement, Hartman acknowledged that "[i]n the event of a breach or threatened breach of [the] Agreement by [him] … [Union Underwear would] face irreparable injury which [would] not be quantifiable in dollar terms, and that [Union Underwear would] be entitled, in addition to remedies otherwise available herein or at law or in equity, to temporary and permanent injunctive relief enjoining such breach or threatened breach." Hartman further agreed that Union Underwear "may recover their attorneys' fees and expenses associated with [his] breach of [the] Agreement."

33. In Section 2 of the Agreement, the parties agreed that "if [Union Underwear] is required to post a bond to secure an injunction, the amount of the bond shall be One Thousand Dollars ($1,000.00)."

### Hartman Resigns and Goes to Work for Hanes

34. On July 10, 2017, Hartman tendered his resignation from Union Underwear and informed Union Underwear that he had accepted an offer of employment with Hanes, a competitor of Union Underwear and Fruit of the Loom.

35. Hartman's employment with Union Underwear was terminated that day.

36. Hartman has begun working for Hanes.

37. On July 13, 2017, Fruit of the Loom sent Hartman a letter reminding him of the promises he made in the Agreement, including the non-solicitation provision and the non-competition provision. Fruit of the Loom also sent a copy of that letter to Hanes.

38. On July 19, 2017, counsel for Hanes, Gini Piekarski, responded to Fruit of the Loom's letter by email. In that email, Ms. Piekarski asserted that Hartman's role with Hanes is as director of Hanes's "Polo Ralph Lauren licensed business (men's/boys underwear and sleepwear)," which she characterized as a "premium brand" involving a "premium product" that is sold in channels that Fruit of the Loom does not compete in. She then asserted that Hartman is not working "in any area, position or capacity in which [he] gained particular knowledge or experience during [his] employment" with Union Underwear.

39. On information and belief, Hartman's role as director of Hanes's Polo Ralph Lauren-licensed underwear business is, in fact, a position in which he "gained particular knowledge or experience during [his] employment" with Union Underwear. For instance, Hartman "gained particular knowledge or experience during [his] employment" with Union Underwear of Fruit of the Loom's plans to expand their Men's and Boys' Underwear business into more "premium" channels, including Fruit of the Loom's plans to directly compete with Hanes's "premium" underwear brands, such as Polo Ralph Lauren. Indeed, Hartman was instrumental in

formulating and implementing—and is intimately familiar with—this long-range strategy prior to the termination of his Union Underwear employment.

40. In addition, on information and belief, Hartman's role as director of Hanes's Polo Ralph Lauren-branded men's underwear and sleepwear business includes participation in periodic strategic and long range planning meetings involving Hanes's other products, such as casualwear and women's intimate apparel. Hartman would thus be in an "area, position or capacity" to leverage his "particular knowledge" of Fruit of the Loom's long-range strategic plans and confidential customer, pricing, specifications, and cost information regarding such products in direct competition with Fruit of the Loom.

41. On information and belief, Hartman's role as director of the Polo Ralph Lauren-licensed business also involves the solicitation of "Covered Customers," *i.e.*, customers who purchased *any product* from Union Underwear or any Fruit of the Loom affiliate while Hartman was employed by Union Underwear. For instance, Hanes sells Polo Ralph Lauren men's underwear and sleepwear products to at least the following retailers: Macy's, Belk, Inc., and TJX Companies, Inc. (which includes retailers TJ Maxx and Marshall's). Each of these retailers is *also* a customer of Union Underwear and/or a Fruit of the Loom affiliate. Thus, as director of Hanes's Polo Ralph Lauren-branded underwear business, Hartman will necessarily be soliciting Covered Customers.

42. As a result of Hartman's conduct, Union Underwear has suffered and will continue to suffer a loss of customer goodwill, interference with customer relationships, diminished value of confidential information and trade secrets, loss of competitive position with respect to Hanes, and loss of fair competition with Hanes.

## COUNT I
## BREACH OF CONTRACT
## (NON-COMPETITION PROVISION)

43. Union Underwear realleges each and every allegation in the preceding paragraphs of this Complaint as if set forth fully herein.

44. On April 13, 2016, Hartman signed the Agreement.

45. The Agreement was supported by good and valid consideration, including Hartman's eligibility to participate in the 2016 Management Incentive Program.

46. In Section 7 of the Agreement, Hartman acknowledged that his participation in the 2016 Management Incentive Program was "sufficient consideration" for his promises in the Agreement, "whether or not a bonus [was] actually earned" under the Management Incentive Program.

47. The Agreement is a valid contract.

48. In Section 1(a)(ii) of the Agreement, Hartman promised that "for a period of twelve (12) months after termination of [his] employment with [Union Underwear], [he would] not, directly or indirectly, on behalf of [himself] or any other person, company or entity … work or provide services for a Competitor, whether as an independent contractor, adviser or otherwise, in any area, position, or capacity in which [he] gained particular knowledge or experience during [his] employ" with Union Underwear.

49. The Agreement defined the term "Competitor" to mean several specific, identified companies, including Hanes.

50. In the second "Whereas" clause of the Agreement, Hartman expressly acknowledged and agreed that the terms of the Agreement, including the non-competition provision, "were reasonable and necessary to protect [Union Underwear's] legitimate business

interests, and that [his] compliance with [the] Agreement [would] not unreasonably restrict [him] from obtaining other gainful, lucrative and desirable employment that [would] not violate the restrictions contained in [the] Agreement."

51. On July 10, 2017, Hartman tendered his resignation from Union Underwear. His employment with Union Underwear ended that day.

52. Hartman is now working for Hanes in an area, position or capacity in which he gained particular knowledge or experience during his employ with Union Underwear.

53. Hartman has breached the non-competition provision in the Agreement.

54. Union Underwear has been damaged by Hartman's breach of the non-competition provision.

## COUNT II
## INJUNCTIVE RELIEF
## (NON-COMPETITION PROVISION)

55. Union Underwear realleges each and every allegation in the preceding paragraphs of this Complaint as if set forth fully herein.

56. By working and providing services for Hanes, in an area, position or capacity in which he gained particular knowledge or experience during his employ with Union Underwear, before the expiration of 12 months after termination of his employment with Union Underwear, Hartman has breached the non-competition provision in the Agreement.

57. Hartman's breach of the non-competition provision has resulted in irreparable injury to Union Underwear.

58. In Section 2 of the Agreement, Hartman expressly acknowledged that a breach of the non-competition provision by him would result in "irreparable injury which will not be quantifiable in dollar terms."

59. There is no adequate remedy at law for Hartman's breach of the non-competition provision.

60. The balance of hardships favors an equitable remedy.

61. The requested injunction would not cause substantial hardship to Hartman.

62. In the second "Whereas" clause of the Agreement, Hartman expressly acknowledged and agreed that the terms of the Agreement, including the non-competition provision, were "reasonable and necessary to protect [Union Underwear's] legitimate business interests and that [his] compliance with [the] Agreement [would] not unreasonably restrict [him] from obtaining other gainful, lucrative and desirable employment that [would] not violate the restrictions contained in [the] Agreement."

63. The public interest would not be disserved by issuance of the requested injunction, which would require Hartman to keep his promise—given in exchange for good and valid consideration—not to compete with Fruit of the Loom for a 12-month period.

64. In Section 2 of the Agreement, Hartman expressly acknowledged that Union Underwear "[would] be entitled … to temporary and permanent injunctive relief enjoining [a] breach or threatened breach" of the Agreement by Hartman.

65. The parties have agreed that if the Court determines that "[Union Underwear] is required to post a bond to secure an injunction, the amount of the bond shall be One Thousand Dollars ($1,000.00)."

## COUNT III
## BREACH OF CONTRACT
## (NON-SOLICITATION PROVISION)

66. Union Underwear realleges each and every allegation in the preceding paragraphs of this Complaint as if set forth fully herein.

67. On April 13, 2016, Hartman signed the Agreement.

68. The Agreement was supported by "good and valid consideration," including Hartman's eligibility to participate in the 2016 Management Incentive Program.

69. The Agreement is a valid contract.

70. In Section 7 of the Agreement, Hartman acknowledged that his participation in the 2016 Management Incentive Program was "sufficient consideration" for his promises in the Agreement, "whether or not a bonus [was] actually earned" under the Management Incentive Program.

71. In Section 1(a)(i) of the Agreement, Hartman promised that for a period of 12 months after termination of his employment, he "[would] not, directly or indirectly, on behalf of [himself] or any other person, company or entity … solicit or participate in soliciting any Covered Customer (as defined below), directly or indirectly, to purchase products from a Competitor (as defined below), or to decrease its level of business or discontinue doing business with" Union Underwear.

72. The Agreement defined the term "Covered Customer" to mean "a retailer, wholesaler, distributor, or other entity which purchased products of [Union Underwear] or an affiliate during [Hartman's] employment with [Union Underwear] or an affiliate."

73. The Agreement defined the term "Competitor" to mean several specific, identified companies, including Hanes.

74. In the second "Whereas" clause of the Agreement, Hartman expressly acknowledged and agreed that the terms of the Agreement, including the non-solicitation provision, "were reasonable and necessary to protect [Union Underwear's] legitimate business interests and that [his] compliance with [the] Agreement [would] not unreasonably restrict [him]

13

from obtaining other gainful, lucrative and desirable employment that [would] not violate the restrictions contained in [the] Agreement."

75. On July 10, 2017, Hartman tendered his resignation from Union Underwear. His employment with Union Underwear ended that day.

76. Hartman is now working for Hanes as director of Hanes's Polo Ralph Lauren-branded men's underwear and sleepwear business.

77. On information and belief, Hartman's position with Hanes involves the solicitation, directly or indirectly, of "Covered Customers," *i.e.*, customers such as Macy's, Belk, Inc., and TJX Companies, Inc. (which includes retailers TJ Maxx and Marshall's), who purchased *any product* from Union Underwear or any Fruit of the Loom affiliate while Hartman was employed by Union Underwear, to purchase products from Hanes or to decrease their level of business or discontinue doing business with Fruit of the Loom and Union Underwear.

78. Hartman has breached the non-solicitation provision in the Agreement.

79. Union Underwear has been damaged by Hartman's breach of the non-solicitation provision.

### COUNT IV
### INJUNCTIVE RELIEF
### (NON-SOLICITATION PROVISION)

80. Union Underwear realleges each and every allegation in the preceding paragraphs of this Complaint as if set forth fully herein.

81. By accepting a job that involves the solicitation, directly or indirectly, of Fruit of the Loom and Union Underwear customers before the expiration of 12 months after termination of his employment with Union Underwear, Hartman has breached the non-solicitation provision in the Agreement.

82. Hartman's breach of the non-solicitation provision will result in irreparable injury to Union Underwear.

83. In Section 2 of the Agreement, Hartman expressly acknowledged that a breach of the non-solicitation provision by him would result in "irreparable injury which will not be quantifiable in dollar terms."

84. There is no adequate remedy at law for Hartman's breach of the non-solicitation provision.

85. The balance of hardships favors an equitable remedy.

86. The requested injunction would not cause substantial hardship to Hartman.

87. In the Second "Whereas" clause of the Agreement, Hartman expressly acknowledged and agreed that the terms of the Agreement, including the non-solicitation provision, were "reasonable and necessary to protect [Union Underwear's] legitimate business interests and that [his] compliance with [the] Agreement [would] not unreasonably restrict [him] from obtaining other gainful, lucrative and desirable employment that [would] not violate the restrictions contained in [the] Agreement."

88. The public interest would not be disserved by issuance of the requested injunction, which would require Hartman to keep his promise—given in exchange for good and valid consideration—not to solicit Fruit of the Loom and Union Underwear customers for a 12-month period.

89. In Section 2 of the Agreement, Hartman expressly acknowledged that Union Underwear "[would] be entitled … to temporary and permanent injunctive relief enjoining [a] breach or threatened breach" of the Agreement by Hartman.

90. The parties have agreed that if the Court determines that "[Union Underwear] is required to post a bond to secure an injunction, the amount of the bond shall be One Thousand Dollars ($1,000.00)."

## PRAYER FOR RELIEF

Union Underwear respectfully requests that the Court enter a judgment in favor of Union Underwear and against Hartman for the following:

A. A preliminary and permanent injunction forbidding Hartman from "work[ing] or provid[ing] services for a Competitor," including Hanes and any of its subsidiaries, affiliated companies or successors, "in any area, position or capacity in which [he] gained particular knowledge and experience during [his] employ" with Union Underwear and/or Fruit of the Loom, including as director of Hanes's Polo Ralph Lauren-licensed men's underwear and sleepwear business, before the expiration of "a period of twelve (12) months after termination of [his] employment" with Union Underwear.

B. A preliminary and permanent injunction forbidding Hartman from "solicit[ing] or participat[ing] in soliciting any Covered Customer" (as defined by the Agreement), "directly or indirectly, to purchase products from a Competitor," including Hanes and any of its subsidiaries, affiliated companies or successors, or to decrease its level of business or discontinue doing business with" Union Underwear, before the expiration of "a period of twelve (12) months after termination of [his] employment" with Union Underwear.

C. Compensatory damages.

D. Reasonable attorneys' fees.

E. Costs of this action.

F. Any other additional relief that this Court deems just and proper.

Respectfully submitted,

s/ *Regina A. Jackson*
Regina A. Jackson
ENGLISH LUCAS PRIEST & OWSLEY, LLP
1101 College Street, P.O. Box 770
Bowling Green, KY 42102
(270) 781-6500
(270) 782-7782 (fax)
rjackson@elpolaw.com

Matthew H. Lembke (*pro hac vice* pending)
Zachary A. Madonia (*pro hac vice* pending)
BRADLEY ARANT BOULT CUMMINGS LLP
1819 Fifth Avenue North
Birmingham, AL 35203
(205) 521-8000
(205) 521-8800 (fax)
mlembke@bradley.com
zmadonia@bradley.com

Counsel for Plaintiff Union Underwear Company, Inc. d/b/a Fruit of the Loom

## VERIFICATION

I declare, under penalty of perjury, that I have reviewed the Complaint and the facts alleged in the Complaint are true and correct to the best of my personal knowledge and belief. As to the facts alleged upon information and belief, I believe those facts to be true.

Executed on July 28, 2017.

_____
Lis J. Cravens
Senior Vice President, Brand Management and Sales
Union Underwear Company, Inc. d/b/a Fruit of the Loom